NOT DESIGNATED FOR PUBICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 KA 1056

STATE OF LOUISIANA

VERSUS

RONALD DEAN BANDY

Judgment Rendered:   JUL 0 1 2020

Appealed from the
Twenty-First Judicial District Court
In and for the Parish of Tangipahoa
State of Louisiana
Docket Number 903019

Honorable Elizabeth P. Wolfe, Judge Presiding

*************

Scott M. Perrilloux
Patricia Parker Amos
Zachary T. Daniels
Amite, LA

Counsel for Appellee,
State of Louisiana

Bertha M. Hillman
Covington, LA

Counsel for Defendant/Appellant,
Ronald Dean Bandy

*************

BEFORE:  WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1]Honorable William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.**

Defendant, Ronald Bandy, was charged by grand jury indictment with first degree murder, a violation of LSA-R.S. 14:30. He pled not guilty. After a trial by jury, defendant was found guilty as charged. The trial court imposed a sentence of life imprisonment at hard labor, to be served without the benefit of probation, parole, or suspension of sentence. Defendant now appeals. For the following reasons, we affirm defendant's conviction and sentence.

## STATEMENT OF FACTS

In the early morning hours of August 23, 2009, Anthony and Grace Lamonte were at their home in Hammond, Louisiana. Anthony heard footsteps on the porch, but after investigating, found nothing and went back to sleep. Later, both Anthony and Grace were awakened by the sound of a crash, which Anthony initially thought was an accident on the road outside. Anthony got out of bed, opened the bedroom door, and saw three unknown men standing in his house and heard people talking outside. He and Grace shouted at the men to leave. However, the men started shooting at them. Anthony was shot in the chest above the heart and lung, and Grace was killed. After unsuccessfully struggling to dial 911, Anthony was able to use the speed dial function on his phone to call his daughter, who in turn called for help.

Prior to that night, the Lamontes had given John Lamonte, their adult son who lived with them at the time, a truck for his use. John suffered from a serious drug addiction that his parents knew about, and they often tried to help him out. John occasionally loaned out his vehicle for drugs; specifically, John testified that, in July 2009, he loaned the truck to Robae Austin for this purpose. In the process of loaning the truck to Austin, John drove Austin, who was armed, to John's parents' house to allow Austin to drive off with the truck. Sometime later, Austin returned to the Lamonte residence with someone riding in the passenger seat.

2

Although John then drove them to another location, he was never able to conclusively identify the man with Austin. John noticed that both men were in a hurry to be dropped off at the new location. Soon after, police questioned John about the transaction. Less than one month after the truck loan, Grace was murdered when John's parents were shot in their home. At defendant's trial, John testified that although he could not be "a hundred percent" sure in his identification, he believed it was defendant who was the passenger in the truck.

Following the shootings, an investigation at the Lamonte home revealed fingerprints on a piece of broken glass. The fingerprints were subsequently determined to belong to Jarris Monroe. When they arrived at Monroe's apartment in Metairie, Louisiana, investigators did not find Monroe. However, they did find Monroe's roommate, Benny Flowers, whom they questioned. Because of Flowers's responses to the initial questioning, the investigators asked Flowers to submit to a formal interview, which he did. Subsequent to Flowers's interview, in which he identified people at the scene of the Lamonte shootings, he was arrested and arrest warrants were issued for defendant, Monroe, Alice Walker, and Justin Walker. Following a third interview with Flowers, the police learned that a young female driving a green Mustang, who was later identified as Danielle Peters, was also present at, or may have witnessed, the Lamonte shootings.

Flowers, Peters, and Justin Walker testified at defendant's trial. Each were present in or near the Lamonte home at the time of the shootings. Each described defendant as being outside the house during the shootings. Flowers testified defendant drove him and Monroe to the Lamonte house, gave Monroe a gun, and later asked Monroe if he "took care of that for me" upon Monroe's return from the Lamonte house after the couple had been shot. Moreover, Flowers received a phone call from defendant while he was being interviewed, which the police overheard. Defendant informed Flowers that the police were looking for Monroe

3

"for the murder that had happened last night." Only John testified about the "loan" of the truck to Austin.

## ASSIGNMENT OF ERROR: MISTRIAL

In his sole assignment of error, defendant contends the trial court erred in denying his motion for mistrial on the basis of John's statements that he loaned his truck to Austin and that he testified at Austin's trial for an unspecified other offense. Defendant argues this court's ruling on a pretrial writ application filed by the State limited such testimony to three specific witnesses: Flowers, Monroe, and Peters. Defendant contends that because John could not positively identify defendant as the passenger with Austin upon his return, the admission of the testimony was more prejudicial than probative, and only served to confuse the jury.

In response, the State contends that the fact of John loaning his truck to Austin was *res gestae* of the instant offense, and that it would be impossible for the State to prove the alleged offense without reference to another crime occurring. The State argues that the trial court did not abuse its considerable discretion in allowing testimony that did not implicate defendant in the unspecified other crime. The State additionally alleges that it would be absurd to interpret this court's pretrial ruling to mean that other people could testify about this underlying fact, namely, that John lent his car to Austin, but not John himself was prohibited from testifying to that fact.

As defendant notes in his brief, the underlying basis of defendant's assignment of error has already been subject to pretrial litigation in this court. In March 2011, the State gave notice of its intent to use evidence of other crimes committed by defendant pursuant to LSA-C.E. art. 404(B). The State noted that it intended to offer, as part of its case-in-chief, evidence of defendant's participation in two other murders that occurred in July 2009, predating the Lamonte shootings. The State noted that the purpose of introducing such evidence was to show

4

defendant's motive, intent, and absence of mistake or accident in the murder of Grace Lamonte. Several Prieur[2] hearings were held regarding the State's motion. After the trial court ruled that all evidence from the other two murders would be excluded, the State sought writs. This court found that because defendant had not been "indicted, tried or convicted of the two prior murders," the trial court "did not abuse its discretion by denying the State's request to admit the evidence of these murders at relator's trial." State v. Bandy, 2015-1690 (La. App. 1st Cir. 1/12/16) (unpublished writ action).

Defendant then filed eight motions with the trial court, including a motion *in limine* to exclude any references to the previous two homicides by trial witnesses. After conducting additional hearings, the trial court granted defendant's motion prohibiting testimony about the other murders. The State again sought writs. This court found that because the State had to establish as an element of the charged offense that defendant committed the murder upon a victim who was a family member of a witness to a crime, the State was entitled to introduce testimony that an unnamed offense occurred, and that John was a witness thereto. State v. Bandy, 2016-0127 (La. App. 1st Cir. 1/29/16) (unpublished writ action), writ denied, 2016-0649 (La. 5/27/16), 192 So. 3d 739. In ruling on the State's application for writs, this court noted specifically that State witnesses Flowers, Monroe, and Peters should be allowed to testify regarding John lending his truck to Austin and the truck's involvement in the previous two homicides.

The trial record reflects that in response to a State question on direct examination, John acknowledged that he testified against Austin in another trial. The offense for which Austin was tried was not mentioned. The fact that John previously testified against Austin was reiterated during John's cross-examination.

---

[2]See State v. Prieur, 277 So. 2d 126 (La. 1973).

No other witness testified as to any details regarding John "loaning" the truck to Austin.

At the conclusion of John's testimony, defense counsel initially sought to enter an objection on the record to John's testimony that Austin had a gun during their truck loan transaction. That objection soon expanded into a contention that it was improper to allow any reference by John to Austin being tried for some other offense. Defendant opined that "[i]t doesn't take much for a jury to put together two-and-two; gun murder." Defendant argued that there was a clear instruction from this court in its initial writ action that no testimony regarding any other murders would be permitted to be introduced at defendant's trial. Because of the allegedly improper testimony, defendant sought a mistrial.

The State responded that John only said that he testified against Austin as a witness in the trial of an unnamed offense. The trial court agreed with the State that the reference was consistent with this court's second writ action and was not an improper reference to the specific information prohibited by the first writ opinion. The trial court also observed that the gun reference "didn't go far, as far as talking about homicide or murder[.]" In sum, the trial court found that this testimony did not preclude or render impossible defendant's ability to obtain a fair trial, and therefore a mistrial was not warranted.

Louisiana Code of Criminal Procedure article 775 provides for a mistrial when prejudicial conduct in or outside the courtroom makes it impossible for defendant to obtain a fair trial. A mistrial is a drastic remedy to be invoked only when defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. The decision whether to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. State v. Eason, 2019-0614 (La. App. 1st Cir. 12/27/19), ___ So. 3d ___, ___, 2019 WL 7207307, *8; see also, State v.

6

Weary, 2003-3067 (La. 4/24/06), 931 So. 2d 297, 321, cert. denied, 549 U.S. 1062, 127 S. Ct. 682, 166 L. Ed. 2d 531 (2006).

A mistrial is warranted under LSA-C.Cr.P. art. 770 when certain remarks are considered so prejudicial and potentially damaging to a defendant's rights that even jury admonition could not provide a cure. The comment must be within earshot of the jury and must be made by a judge, district attorney, or other court official. State v. Edwards, 97-1797 (La 7/2/99), 750 So. 2d 893, 906, cert. denied, 528 U.S. 1026, 120 S. Ct. 542, 145 L. Ed. 2d 421 (1999). Ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice a defendant. State v. Caminita, 2016-0121 (La. App. 1st Cir. 9/16/16), 203 So. 3d 1100, 1106, writ denied, 2016-2045 (La. 9/6/17), 224 So. 3d 988.

To trigger a mandatory mistrial, a remark must unmistakably point to evidence of another crime. A mistrial is not required if the remark only "arguably" points to a prior crime. Edwards, 750 So. 2d at 906; see also State v. Barnes, 2013-576 (La. App. 3d Cir. 12/11/13), 127 So. 3d 1070, 1075, writ denied, 2014-0043 (La. 6/13/14), 140 So. 3d 1188 (to warrant a mistrial, the imputation must unambiguously point to defendant and defendant bears the burden of proving that a mistrial is warranted); State v. Clark, 2005-652 (La. App. 5th Cir. 2/14/06), 924 So. 2d 282, 289, writs denied, 2006-0622 (La. 10/13/06), 939 So. 2d 372 & 2006-1175 (La. 1/12/07), 948 So. 2d 138 (citing Edwards, 750 So. 2d at 906, a comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to LSA-C.Cr.P. art. 770(2), the remark must "unmistakably" point to evidence of another crime); State v. Chambers, 99-678 (La. App. 3d Cir. 1/19/00), 758 So. 2d 231, 236, writ denied, 2000-0551 (La. 9/22/00), 768 So. 2d 600 (reference to defendant having an alias may be reference to another crime, but to warrant mistrial under LSA-C.Cr.P. art. 770, there must be a distinct or recognizable reference to another crime alleged to have been committed by defendant).

As an initial matter, defendant is correct that in the second writ action this court did list the names of three people permitted to reference the fact that John "loaned" the truck to Austin, and that John was not one of them. However, defendant errs in assuming this court's ruling was intended to be an exhaustive list. The underlying fact that John loaned his truck to be used in a subsequent crime is what defendant was attempting to exclude in the original motion *in limine*. This court found that testimony that John loaned his truck to be used in another crime, regardless of who testified to it, and within all other evidentiary limits, was admissible. The State was entitled to establish the necessary element of the charged offense, namely that John was a witness in a criminal prosecution and that his mother, Grace, died as a consequence. Put simply, there is no better witness to what John observed than John.

Additionally, even assuming *arguendo* that the statement was inadmissible, we are unable to find defendant was prejudiced to such a degree as to warrant the "extreme remedy" of a mistrial. As defendant notes in his brief, the jury was unclear as to how John and defendant were "associated." John testified about his interactions with Austin, and only tenuously identified defendant as possibly the person accompanying Austin upon his return. Furthermore, John did so in response to defense counsel's question on cross-examination. There is nothing in the record showing the State improperly referenced defendant's alleged involvement in the two murders. John's testimony was that he testified at the trial of a third party. This testimony was proper to establish the element of the charged offense. Other witnesses, such as Flowers and Peters, were the witnesses used by the State to implicate defendant in the murder of Grace. In sum, while there was

8

reference to an "other crime," there was nothing presented to the jury suggesting that defendant was responsible for it. Accordingly, we find no merit to defendant's assignment of error.

**CONVICTION AND SENTENCE AFFIRMED.**